IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORLANDO FOREMAN               *

v.                            *    Civil Action No. DKC-09-2038

UNNAMED OFFICERS OF THE       *
FEDERAL BUREAU OF PRISONS[1]
                              *

**MEMORANDUM OPINION**

Currently pending in this case is Defendants' Motion to Dismiss or for Summary Judgment (Paper 9) and Plaintiff's Motion for Appointment of Counsel. (Paper 19). Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6.

**I. Background**

Plaintiff is a federal inmate who is a T-4 disabled paraplegic confined to a wheelchair. (Verified Complaint, Paper 1, at 2). On November 5, 2007, he was transported from the Federal Detention Center in Philadelphia, Pennsylvania, to the Federal Correctional Institution in Cumberland (FCI Cumberland). (*Id.*). Plaintiff claims the transportation van he was put on was not equipped with "secureman restraints as required under the Rehabilitation Act of 1978 and the Americans With Disabilities Act of 1990 for the transportation of disabled

---

[1] Defendants identify the officers as BOP Officers Charles Dues and Shannon Sherrer, currently assigned to FCI Fairton, New Jersey.

persons in wheelchairs, and for all wheelchair accessible vehicles." (*Id*. at 3). Plaintiff alleges he voiced his concerns about the equipment on the van, but his concerns were dismissed and he was told to "be quiet and stop complaining." (*Id*.). He asserts that no attempt was made to secure his wheelchair in any manner before the van began to move.

Plaintiff claims that due to erratic driving and the fact that his chair was not properly secured, he began to roll around in the back of the van in a hazardous manner. He states that at one point during the trip his wheelchair almost slammed into the wheelchair lift on the passenger side of the van, requiring the officers to stop the van and reposition his wheelchair. Plaintiff states he complained again about his wheelchair not being secured, but the officers told him to "relax and enjoy the free ride." (Paper 1, at 3). The officers told Plaintiff to hold on to the bars covering the windows in the van to keep the chair from rolling.

Plaintiff states that the driver was operating the van in such a reckless manner that he almost caused an accident with another vehicle. The driver braked suddenly, causing Plaintiff to be thrown from his wheelchair head-first into the steel cage that separates the front from the rear of the van. Plaintiff claims he was knocked into a semi-conscious and confused state

2

because of the accident.  He alleges he was left on the floor of the van with the wheelchair on top of him for approximately five to ten minutes, until the officers stopped at a Wawa gas station.

Upon opening the back door of the van, the officers observed Plaintiff's injuries, helped him into his wheelchair, and purchased an ice pack and a cold drink for him.  Plaintiff states the officers called to report the accident and to inform staff at FCI Cumberland that Plaintiff would need medical care upon his arrival.  Plaintiff complained of head, neck, and back pain as well as dizziness, but no ambulance was called.   To address the problem, the officers removed Plaintiff from his wheelchair and sat him on a bench seat in the back of the van, without restraints or safety belts.  Consequently, Plaintiff was forced to hold onto whatever he could find to provide him with support and stability during the final leg of the trip.

Defendants state that they transported Plaintiff in a wheelchair accessible escort van and secured the wheelchair to the floor using straps available in the van and slots in the floor.  They acknowledge that the wheelchair did not have a seatbelt, that there was nearly an accident during Plaintiff's transport and that he fell from his wheelchair as a result. (Paper 9).  The van was forced to stop suddenly when another

3

car pulled in front of it. Defendants state that, after the accident, they put Plaintiff on one of the bench seats because his wheelchair is not equipped with a seat belt and they were concerned he could fall if the van was required to stop suddenly again.

When Plaintiff arrived at FCI Cumberland, he was screened by Mrs. Foote, a member of the medical staff, who assessed Plaintiff's injuries and prepared a written report. Additionally, an accident report was prepared by the officers who transported Plaintiff in the van. Plaintiff claims an x-ray taken of his head showed "trauma from the accident." Defendants claim Plaintiff had an abrasion on his head from the fall which required treatment with Motrin and nothing further.

Plaintiff contends that he suffers constant neck pain, headaches, and numbness in his arm, constant discomfort, and frequent muscle spasms as a result of the accident. He claims FCI Cumberland medical staff has only provided him with Motrin for pain, and he has not been seen by a specialist. (Paper 1). Defendants assert that Plaintiff has received no follow up care because he had no injuries requiring follow up. (Paper 9, Ex. 4).

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**III. Analysis**

    **A. ADA and Rehabilitation Act Claims**

Plaintiff asserts he was deprived of appropriate transportation accommodations as a disabled person under the ADA and the Rehabilitation Act. The ADA does not apply to the federal government, its agencies or employees. 42 U.S.C. § 12111(5)(B)(i). Indeed, as Defendants note, Plaintiff is well aware that the ADA does not apply to the federal government as he has raised a similar claim previously and it was rejected on the same basis. *See Foreman v. Bureau of Prisons,* 2005 WL 3500807, 10 (D.N.J.) (D.N.J. 2005) (rejecting claim that denial of medically necessary shoes violated ADA because it is

6

inapplicable to federal government and there was no evidence of discrimination, *citing Bryant v. Madigan*, 84 F. 3d 246, 249 (7th Cir. 1996)).

Similarly, any claim that the equipment used to secure Plaintiff's wheelchair in the transport van did not comply with the ADA or the Rehabilitation Act must fail because there is no evidence that Plaintiff was discriminated against because he is disabled.[2]  To state a claim under the ADA or the Rehabilitation Act the litigant must prove he has a disability; he is otherwise qualified to receive the benefits of a public service; and he was excluded from participation in or denied the benefits of such service because of his disability. *See Constantine v. Rectors and Visitors of George Mason University,* 411 F.3d 474, 488 -489 (4th Cir. 2005), *Hooven-Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001).  Plaintiff has failed to show he was excluded from the benefit of a service or program *because* of his disability.

B. **Eighth Amendment Claim**

Plaintiff also raises an Eighth Amendment claim pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). To establish an Eighth Amendment claim, Plaintiff must

---

[2] Rather, Plaintiff is seeking an accommodation, the use of "secureman" restraints, when he is transported by prison officials.

present evidence that prison officials acted with a culpable state of mind to deprive Plaintiff of a basic human need that is objectively sufficiently serious. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (Eighth Amendment prohibits "unnecessary and wanton infliction of pain."); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993) (deliberate indifference to future harm caused by ETS). Defendants argue that no constitutionally-protected right to safety belts exists for prisoners, and Plaintiff has failed to show that Defendants acted with deliberate indifference to Plaintiff's health and safety. Furthermore, they argue that even if the court finds a violation of the Eighth Amendment, Defendants are protected by qualified immunity because Plaintiff cannot demonstrate violation of any "clearly established constitutional requirement." (Paper 9, at 8). Because the question of whether Defendants can claim qualified immunity encompasses the question of whether a violation of the Eighth Amendment has occurred, the analyses can be performed simultaneously.

1.  **Qualified Immunity Standard**

When performing discretionary functions, government officials such as Defendants are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997)(quoting *Harlow v. Fitzgerald*, 457 U.S 800, 818 (1982)). "In determining whether the legal right is clearly established, it is critically important to avoid defining the applicable right at too abstract a level." *Id*. at 1095-1096.

Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Saucier v. Katz*, 533 U.S. 194 (2001).

The Supreme Court recently revised the procedure for determining whether a defendant is entitled to qualified immunity. *Pearson v. Callahan*, --- U.S. ---, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Instead of the rigid two-prong analysis, which was to be "considered in proper sequence" as directed in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at

hand." *Id*. at 818. The first prong considers whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a ... motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007)(citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)). Finally, the court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier*, 533 U.S. at 200.

Pursuant to *Pearson v. Callahan*, in an appropriate case, the court can resolve the issue by looking only at the second prong. *Pearson,* 129 S. Ct. at 818. In this case, the second prong is dispositive as to the damage claim because courts are still developing the framework for analysis of incidents like the one that occurred here within the rubric of Eighth Amendment

law. Before turning to the second prong, however, it is appropriate to discuss the constitutional framework for assessing Defendants' actions.

### 2. The First Prong of the Qualified Immunity *Saucier* Analysis

Courts have addressed the issue of transportation of prisoners under two different Eighth Amendment analyses: the conditions of confinement analysis and the adequacy of medical care analysis. Although generally applied to different circumstances, the analyses share similar standards.

In *Allah v. Goord*, the court utilized the latter analysis. 405 F.Supp.2d 265 (S.D.N.Y. 2005). In that case, plaintiff Divine Allah (proceeding pro se) brought several claims, including one for violation of the Eighth Amendment against Glen Goord, Commissioner of the Department of Correctional Services, et al. Allah, a wheelchair-bound prisoner, alleged that during a return trip from St. Agnes Hospital to the prison facility, officers transporting him failed adequately to secure his wheelchair in the van. The officer driving then exited the parking lot by way of a steep declining hill at a high rate of speed and then abruptly applied the brakes, causing Allah to fall from his chair and injure himself. The officer resumed driving and "once again drove quickly and applied the brakes suddenly." *Id*. at 271. The court noted that in order to

establish an Eighth Amendment violation arising out of the denial of medical care, the plaintiff had to prove that the defendants were deliberately indifferent to his serious medical needs.

> The deliberate indifference standard contains both an objective and subjective prong. Under the objective prong, an inmate must prove "that the deprivation alleged is 'objectively sufficiently serious' such that plaintiff was denied 'the minimal civilized measure of life's necessities.'" [*Trammell v. Keane*, 338 F.3d 155, 162 (2nd Cir. 2003)] [. . . .] The subjective prong requires a showing that defendant "possessed a 'sufficiently culpable state of mind.'" [*Trammell*, 338 F.3d at 162] The level of culpability must be something "more than negligence but less than conduct undertaken for the very purpose of causing harm." [*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2nd Cir. 1994)]

405 F.Supp.2d at 273-4.

The court in *Allah v. Goord* found that under the objective prong, plaintiff alleged that he suffered serious injury to his head, neck and back and, importantly, that his "injuries were compounded by the Officers' decision to repeat their action." *Id*. at 276. The court found that the conduct was therefore sufficiently serious. The court also found that the subjective prong of the test was met, citing allegations by Allah that the danger was obvious because the officers sped and stopped quickly twice, and because other prisoners had been injured while being

12

transported in the same manner. *Id.* (*See also Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005), where the Court of Appeals for the Tenth Circuit provided a summary of the law applicable to such claims and noted that "[a] prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The test for constitutional liability of prison officials involves both an objective and a subjective component.").

Other courts have held that a case involving wheelchairs and seatbelts is "best characterized as an Eighth Amendment conditions-of-confinement claim." *Dade v. Kennard*, 2008 U.S. Slip Copy, 2008 WL 4879168 (D.Utah 2008) (Where pro se plaintiff prisoner who was a wheelchair user alleged that jail staff routinely failed to secure his seatbelt causing him to be injured.).

In general, no matter which analysis is applied, courts seem to require something more than the simple lack of a safety belt during transport. *See Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902 (8th Cir. 1999)(Court found for Defendants when pretrial detainee rendered quadriplegic after being placed in the rear of a patrol wagon without a safety restraints during transport when an accident occurred); *Harris v. Benson*, Slip

13

Copy, 2009 WL 1740593 (D.Neb. 2009)(Plaintiff alleged that Defendants failed to keep him safe by failing to fasten a seatbelt around him while transporting him on trip that was only several blocks. Court found that driver was very cautious and that the accident was not his fault. No liability on part of Defendants.); *Brown v. Fortnor*, 518 F.3d 552, 558 (8th Cir. 2008)(Noting that the court had previously held that "failure to provide a seatbelt to a prisoner while driving in a manner that puts the prisoner at risk of injury can constitute deliberate indifference to a prisoner's safety and health."); *Dexter v. Ford Motor Co.*, 92 Fed. Appx. 637, 637 WL 254753 (10th Cir. 2004)(Finding that a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension. Several prisoners were being transported and were supposed to be belted, but because they were handcuffed they could not fasten their seatbelts. The official driving the van was speeding and drove into the median, resulting in plaintiff becoming quadriplegic. The court found that Dexter only alleged "failure to seatbelt" as the reason for the violation, but did not mention "driving recklessly" and the lack of seat-belting was not a violation of the Constitution.). However, see *Ford v. Fletes*, 211 F.3d 1273 (9th Cir. 2000)(unpublished)(prisoner "may be able to allege facts showing deliberate indifference" based on transporting him

14

in handcuffs in a vehicle without doors, seat belts or restraints from which he fell).

Many of the aforementioned courts have examined whether the failure to provide seatbelts to inmates presented an unreasonable risk of harm and concluded that it did not. "While the severity of harm should an accident occur may be exacerbated by the failure to seatbelt, it is not directly occasioned by it and the other variables must be included in the risk equation." *Dexter,* 92 Fed.Appx. 637 at 641, 2004 WL 254753 at 3; *see also Spencer*, 183 F.3d 902 at 906 (no municipal liability for purchase of prison transport vans without safety restraints); *Carrasquillo v. New York,* 324 F.Supp.2d 428, 437 (S.D.N.Y. 2004) (auto accidents do not give rise to federal causes of action).

Other cases have involved injuries to people confined to wheelchairs. As mentioned above, the United States District Court for the Southern District of New York addressed the issue of whether the failure to secure a wheelchair-confined prisoner in a prison transport van violated the Eighth Amendment. *See Allah v. Goord*, 405 F. Supp. 2d 265 (S.D.N.Y. 2005). In concluding that the failure at issue could violate the Eighth Amendment, the court took into account not only the fact that Defendants did not secure Allah's wheelchair, but also that they allegedly purposefully drove at a high rate of speed down a

15

steep incline, abruptly applied the brakes causing Allah to fall from his wheelchair, and (after placing him back into his wheelchair) repeated the same conduct. *Id*. at 276. In addition, Allah alleged that other wheelchair-bound prisoners had been injured in a similar manner because the van used was not equipped with the proper equipment to secure a wheelchair. Thus, the court did not grant qualified immunity to the defendants because it found that Allah had alleged facts sufficient to establish that prison officers were deliberately indifferent to his serious medical need, and that defendants had sufficient notice that their behavior was illegal. *Id*. The court noted:

> [A] reasonable defendant would have understood that his actions violated plaintiff's right to be free from cruel and unusual punishment after plaintiff first fell from his wheelchair. However, defendants' decision to duplicate their wrongdoing demonstrates complete disregard for Divine Allah's safety --- conduct 'which they must have understood from existing law . . . was unlawful.' Accordingly, defendants are not entitled to qualified immunity with respect to plaintiff's Eighth Amendment claim.

*Id*. at 277 (citation and footnote omitted).

Thus, the facts alleged by Plaintiff might suffice to state an Eighth Amendment claim. Although Defendants state they secured Plaintiff's wheelchair to the floor of the van,

Plaintiff disputes that assertion. The Defendants admit that they did not secure Plaintiff to his wheelchair because it did not have a seatbelt. (Paper 9, Exs. 2 and 3). Plaintiff states that if his wheelchair had been properly secured it would not have moved more than two inches in any direction.[3] (Paper 15-1, at 6-7). The danger presented by either set of facts was that Plaintiff could be thrown from his wheelchair if the van stopped suddenly, swerved to avoid an accident, or was involved in an accident.

Defendants admit that Plaintiff was thrown from his wheelchair when the van stopped suddenly to avoid another car, but maintain that the fault belonged to the other driver. (Paper 9, Exs. 2 and 3). While Defendants maintain that placing Plaintiff on a seat in the van was a remedial measure to prevent any future falls, Plaintiff disputes the efficacy of that remedy. *Id*. Plaintiff states because he is a T-4 paraplegic, he has no control of his limbs and suffers sporadic spasms in his lower extremities, making it impossible for him to stabilize himself outside of his wheelchair. (Paper 15-1, at

---

[3] Plaintiff points out that the affidavit of Shannon Sherrer supports his version of events because he states they placed Plaintiff in the van seat to "provide him better protection against his wheelchair *tipping over again* in the event of another emergency stop." (Paper 9, Ex. 3, at 2 (emphasis supplied)).

8). Thus, Plaintiff maintains Defendants' actions of placing him in a seat in the van put him in an even more dangerous position. (*Id.*).

### 3. Second Prong in the Qualified Immunity *Saucier* Analysis

As will be discussed, because of the lack of established law in this circuit on the subject of seat belts and restraining devices for inmates who are being transported, Defendants in this case were not on notice that their behavior somehow violated a clearly established right, and thus are entitled to summary judgment on the claim for damages.

The Fourth Circuit has addressed the requirements for meeting the second prong of the qualified immunity analysis.

> Although the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (explaining that "[t]he fact that an exact right allegedly violated has not earlier been specifically recognized by any court does not prevent a determination that it was nevertheless 'clearly established' for qualified immunity purposes" and that " '[c]learly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked").

*Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005). The sources of law to examine are limited:

> Clearly established rights include specifically adjudicated rights as well as those manifestly included within more general applications of the core constitutional principles involved. *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). There are three ways in which law becomes clearly established in Maryland: (1) an authoritative decision by the United States Supreme Court; (2) an authoritative decision by the Fourth Circuit Court of Appeals; or (3) an authoritative decision by the Court of Appeals of Maryland. *Id.* Decisions from other circuits or states are not authoritative for qualified immunity analysis. *Id.*

*Gray v. Torres*, 2009 WL 2169044, *2 (D.Md. 2009)(applied in the §1983 context as to a state actor).

Qualified immunity applies "if officers of reasonable competence could disagree" on whether the conduct at issue was unlawful. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this case, it would not have been clear to a reasonable officer in November 2007 that failure to secure a wheelchair while transporting a prisoner would be a violation of the eighth amendment. Thus, Defendants have met their burden of proof on the second prong of the qualified immunity analysis. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's claim for damages.

### 4. Other Relief Requested

Plaintiff's complaint seeks more than damages. He seeks declaratory and injunctive relief as well. Qualified immunity does not apply to those aspects of the case. Because the case will proceed on those claims, Plaintiff's request for the appointment of counsel will be granted.

## IV. Conclusion

For the foregoing reasons, Defendants are entitled to the defense of qualified immunity as to damages and the court will grant the Defendants' motion for summary judgment on that aspect of Plaintiff's eighth amendment claim and on the ADA and Rehabilitation Act claims. The claims for declaratory and injunctive relief remain, however, and Plaintiff's request for appointment of counsel will be granted. A separate order will follow.

```
_____/s/_____
```
DEBORAH K. CHASANOW
United States District Judge