IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ORLANDO FOREMAN                     :

    v.                              :  Civil Action No. DKC 09-2038

UNNAMED OFFICERS OF THE FEDERAL     :
BUREAU OF PRISONS                   :

**MEMORANDUM OPINION**

Presently pending in this civil rights case is a motion for reconsideration (ECF No. 26) filed by Defendants. The issues have been fully briefed and the court now rules pursuant to Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant reconsideration but deny Defendants' request to dismiss the remaining claims.

**I. Background**

On July 31, 2009, Plaintiff Orlando Foreman, a federal inmate, filed a *pro se* complaint against two unnamed officers employed by the Bureau of Prisons ("BOP"). (ECF No. 1).[1] Plaintiff is a T-4 disabled paraplegic who is confined to a wheelchair. He contends that Defendants injured him during transport when they drove erratically and did not secure him

---

[1] Those unnamed officers were later identified as BOP Officers Charles Dues and Shannon Sherrer, two officers presently employed at FCI Fairton in New Jersey.

with appropriate safety restraints.[2] The complaint asserts claims under "42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)." (ECF No. 1, at 1). Plaintiff sought to "enforce" his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Eighth Amendment to the Constitution. (*Id.*). He requested declaratory and injunctive relief and damages of $1.5 million. (*Id.* at 6-7).

On July 7, 2010, Defendants' motion to dismiss or for summary judgment was granted in part. (ECF No. 21). In its memorandum opinion, the court concluded that any claims under the ADA or the Rehabilitation Act failed, but "the facts alleged by Plaintiff might suffice to state an Eighth Amendment claim." (ECF No. 20, at 16). Qualified immunity, however, barred any claim for monetary damages because Defendants' behavior did not violate a clearly established right (*id.* at 18-19). The court declined to dismiss the entire case, however, reasoning: "Plaintiff's complaint seeks more than damages. He seeks declaratory and injunctive relief as well. Qualified immunity does not apply to those aspects of the case." (ECF No. 20, at

---

[2] The facts underlying Plaintiffs' claims are described in more detail in the court's prior memorandum opinion. (*See* ECF No. 20, at 1-4).

20). Defendants had not separately argued that those claims for relief failed.

**II. Analysis**

Defendants have moved for reconsideration of the court's decision to allow the claims for declaratory and injunctive relief to proceed. (ECF No. 26). Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment adjudicating all the claims." Fed.R.Civ.P. 54(b). Thus, Rule 54(b) governs reconsideration of interlocutory orders that do not constitute final judgments in a case. Because the court's prior decision did not adjudicate all of Plaintiff's claims, it falls under the scope of Rule 54(b). *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003).

In the Fourth Circuit, the precise standard that should govern a motion such as this one is somewhat unclear. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). For instance, the Rule 60(b) standard does not bind the court on motion to a reconsider an interlocutory order. *Id.* at 1470; *Am. Canoe Ass'n*, 326 F.3d at 514. Even so, courts sometimes use the Rule 60(b) factors – newly discovered evidence, excusable neglect, etc. – as "guideposts" in deciding when to reconsider an earlier decision.

*Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 291 (D.Md. 2008).

With those considerations in mind, the court concludes that it is appropriate to reconsider its prior decision in this case. While Defendants might have advanced their current arguments in their original motion for summary judgment, they cannot be faulted for missing a subtle distinction in the application of qualified immunity. The court's decision created new issues that Defendants failed to anticipate, some of which are bound up in issues of jurisdiction.

> The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law. Though that obligation may be tempered at times by concerns of finality and judicial economy, nowhere is it greater and more unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority.

*Am. Canoe Ass'n*, 326 F.3d at 516. Therefore, the court will exercise its discretion and reconsider the decision on injunctive and declaratory relief.

Plaintiff's remaining claims seek injunctive and declaratory relief. Defendants suggest that Plaintiff cannot seek injunctive or declaratory relief in a *Bivens* action, as "*Bivens* is by definition a lawsuit seeking money damages against individual government actors for violations of constitutional

rights by the named defendants in their individual capacities." (ECF No. 26, at 6). That may be so, but the United States Court of Appeals has squarely held that a court may order declaratory and injunctive relief in a "*Bivens* type" action. *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *see also generally Farmer v. Brennan*, 511 U.S. 825 (1994) (vacating and remanding the dismissal of a prisoner's nominal *Bivens* action wherein prisoner sought injunctive relief for violations of the Eighth Amendment). In *Ross*, the plaintiff brought a *Bivens* claim that also sought declaratory and injunctive relief, which the lower court dismissed because of an ostensible lack of jurisdiction. *Id.* at 1133-34. The Fourth Circuit reversed, holding that it was "clear that the district court had jurisdiction to give a declaratory judgment as to whether constitutional rights were violated and if so to order appropriate injunctive relief." *Id.* at 1135. The court further emphasized that "[a] district court possesses authority to order injunctive relief to remedy constitutional violations," citing *Bivens*. *Id.*; *see also Westinghouse Elec. Corp. v. Schlesinger*, 542 F.2d 1190, 1209 (4th Cir. 1976), *superseded on other grounds by* 5 U.S.C. § 552b ("[I]t is an inherent power of the federal judiciary to enjoin an act sought to be carried out by a federal official in violation of federal law." (quotation marks omitted)).

5

Therefore, there is a jurisdictional basis to award Plaintiff injunctive or declaratory relief here.

Defendants nevertheless argue that Plaintiff's injunctive and declaratory claims cannot proceed against them in their official capacities. (ECF No. 26, at 6-7). In support, they cite a line of cases holding that *Bivens* suits may not be lodged against officers or agents acting in their official capacities. (*Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005)). Such cases, however, concern claims for monetary relief, not injunctive relief. In *Meyer*, for instance, the Supreme Court focused on the problems that would result if a *Bivens*-based damages remedy were permitted to run against federal agencies. *See, e.g.*, *Meyer*, 510 U.S. at 485 ("If we were to imply a *damages* action directly against federal agencies . . ."); *id.* at 486 ("Finally, a *damages* remedy against federal agencies would be inappropriate . . ."); *id.* ("If we were to recognize a direct action for *damages* against federal agencies . . .") (emphasis added throughout). *Meyer* and its progeny were justifiably animated by the wish to limit entry into the public fisc. *Id.* (noting that a direct action for damages against the government would "creat[e] a potentially enormous financial burden for the Federal Government").

In contrast, injunctive actions against government officials largely do not draw funds from the public treasury and have long been recognized by courts. *Cf. Ex Parte Young*, 209 U.S. 123, 151-56 (1908) (holding that sovereign immunity does bar claims for prospective, equitable, or injunctive relief against state officials charged with violating federal law); *see also Sabina v. Fed. Bureau of Prisons*, No. 08-3903-TLW-PJG, 2010 WL 972579, at *3-4 (D.S.C. Feb. 12, 2010) (explaining various ways in which federal prison officials are susceptible to suits for injunctive relief). Indeed, one of the cases cited by Defendants, *Simmat*, *supra*, recognizes this reality and concludes that courts have jurisdiction to entertain prisoner suits like the present one.

In short, the cases cited by Defendants do not change the outcome dictated by *Ross*. *See, e.g.*, *Sabina*, 2010 WL 972579, at *2 ("Accordingly, *Bivens*'s rules regarding suits for monetary damages do not control the disposition of [the plaintiff]'s claims."). Plaintiff in this case has a right to pursue injunctive and declaratory relief to rectify the purported constitutional wrongs. The principle of "preclusion of actions against federal officers or agents in their official capacity as violative of sovereign immunity is inapplicable to claims for injunctive relief." *Everett v. Francis*, No. 5:07CV135, 2009 WL 2971359, at *4 (N.D.W.Va. Sept. 16, 2009); *see also Morrison v.*

*Pettiford*, No. 4:07-1504-CMC-TER, 2007 WL 4729692, at *1 (D.S.C. Dec. 18, 2007) ("Sovereign immunity does not bar . . . [a *Bivens*] action for injunctive relief." (citations omitted)); *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F.Supp.2d 1177, 1193 (N.D.Cal. 2009) ("[T]o the extent that plaintiffs seek only injunctive and declaratory relief against ICE and the DHS, the *Bivens* claims are not subject to dismissal on the basis of sovereign immunity."). Even if *Bivens* itself does not provide the jurisdictional basis for Plaintiff's claims,[3] *Ross* and other cases allowing injunctive relief reflect that the court possesses jurisdiction in some form. Defendants' argument that Plaintiff's *pro se* complaint should be dismissed merely because it might be read to rely on *Bivens* elevates semantics over substance.

Defendants also argue that sovereign immunity bars Plaintiffs' requested relief because that relief is an impermissible attempt to order the sovereign to take affirmative action. (ECF No. 26, at 8-10 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949)). In *Larson*, the Supreme Court remarked in a footnote that a suit

---

[3] The court recognizes that there is some disagreement on exactly what provides the jurisdictional "hook" for such claims. *See Simmat*, 413 F.3d at 1230-36.

against a government officer might fail if it required more than *cessation* of an unconstitutional act:

> [A] suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign.

*Id.* at 691 n.11. Defendants seize on this footnote and argue that the requested injunctive relief must be denied, as it would compel the government to take action.

The *Larson* footnote's "Delphic pronouncement" has confounded courts and scholars alike for some time now. *Vann v. Kempthorne*, 534 F.3d 741, 752 (D.C. Cir. 2008). Read broadly, the footnote would effect a "sharp and startling change" in the powers of federal courts, but "[t]here is nothing whatsoever in the opinion to indicate [such] an intention." L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity*, 77 Harv. L. Rev. 1, 34 (1963). For this reason, several courts – including the Fourth Circuit – have construed the *Larson* footnote narrowly. In this circuit, affirmative equitable relief against unconstitutional conduct will generally be permitted unless the sovereign will be "stopped in its tracks" and there is "substantial bothersome interference with the operation of government." *Littell v. Morton*, 445 F.2d 1207,

9

1214 (4th Cir. 1971); *see also Westinghouse*, 542 F.2d at 1209 n.59 (stating that *Littell* "narrowed the doctrine [of sovereign immunity] in actual application within a very restricted compass, as established by its rational justification"). Here, there is nothing indicating that the requested relief would constitute a substantial bothersome interference or that it would stop the government in its tracks. Indeed, Defendants do not attempt to measure the impact on the government that an injunction in this case would have. Instead, they rest on the notion that any affirmative compulsion, no matter how *de minimis*, is enough to defeat Plaintiff's relief.[4] *Littell* says otherwise.[5]

---

[4] Defendants characterize Plaintiff's claim as one for affirmative relief by arguing that it would "force the BOP to purchase Secureman safety straps and/or a specially-equipped van, and to institute training of its officers in the transport of wheelchair-bound prisoners." (ECF No. 36, at 5). One could just as easily characterize Plaintiff's claim as a request for cessation - *i.e.*, that Defendants cease transporting him in a dangerous and unconstitutional manner.

[5] Defendants' view would also foreclose any relief against the BOP for many constitutional violations. *See Simmat*, 413 F.3d at 1233 ("The defendants' interpretation of *Larson* would leave prisoners without a remedy for federal prison officials' failure to carry out their constitutional duties, violating the basic principle that where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." (quotations omitted)).

Finally, Plaintiff has established that he has standing. As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing standing under Article III of the Constitution. *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010). To meet those standing requirements, Plaintiff must demonstrate that he has a "personal stake in the outcome," which may be proven by demonstrating a threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quotations omitted). "Abstract injury is not enough. The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. 95, 101-02. Plaintiff cannot rely solely on a past instance of misconduct but he has no obligation to wait for "the consummation of threatened injury to obtain preventive relief." *McBurney*, 616 F.3d at 410 (quotations omitted). Although past injury alone does not establish a "real and immediate threat," past injury may be probative of likely future injury. *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1091 (4th Cir. 1997).[6]

---

[6] Although these standards speak primarily to injunctive relief, a failure to demonstrate real and immediate injury will

11

Plaintiff has established a real and immediate threat of future injury. Plaintiff's condition would appear to be permanent, meaning Plaintiff will continue to face the prospect of being transported while in a wheelchair. Nevertheless, as Plaintiff observes, he has not received "any assurance that his wheelchair will be properly and safely restrained in any future transports by the BOP and that such transports will occur in a wheelchair accessible van with properly trained officers of the BOP." (ECF No. 35, at 10). There is more than a hypothetical chance that he will be transported by the BOP in the future[7] and Defendants ask too much when they insist that Plaintiff point to a moment in the future when transport is scheduled. The idea that Plaintiff could be injured if and when his unsecured wheelchair is transported does not rest on a series of

---

also defeat a claim for declaratory relief. *See Levinson-Roth v. Parries*, 872 F.Supp. 1439, 1446 (D.Md. 1995) ("The Declaratory Judgment Act allows declaratory relief only in cases in which an actual controversy exists. . . . To obtain declaratory judgment, then, plaintiffs must show the presence of a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. A hypothetical threat is not enough. The standing requirements for declaratory relief therefore mirror the requirements for injunctive relief." (citations, quotations, and ellipses omitted)).

[7] Future transport could occur in situations other than transfer to another facility, which is the sole situation Defendants mention. For example, there is some possibility of transport upon Plaintiff's release or if he needs to be taken to receive medical care outside the prison.

"incredible assertions." *Lyons*, 461 U.S. at 106. Plaintiff has standing to seek his requested injunctive and declaratory relief.

**III. Conclusion**

For the foregoing reasons, although the court has reconsidered the issues, Defendants' motion to dismiss will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
